1

2

3          UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
4                 AT SEATTLE

5   PUGET SOUND REPAIR, INC.,

6              Plaintiff,

7       v.                                         No. C04-1366P

8   M/V FREEBIRD, et al.,                          ORDER DENYING IN PART AND
                                                   GRANTING IN PART DEFENDANT
9              Defendants.                         NORTH AMERICAN MARINE
                                                   TRANSPORTATION'S MOTION FOR
10                                                 SUMMARY JUDGMENT

11

12          This matter comes before the Court on Defendant North American Marine Transportation,

13   LLS's ("NAMT") Motion for Summary Judgment.  Having reviewed the pleadings and supporting

14   documents, the Court DENIES in part and GRANTS in part NAMT's motion.  The Court grants

15   summary judgment as to work performed by Puget Sound Repair for use on land and never installed

16   on the vessel; Puget Sound Repair has no maritime lien arising from this work.  The Court denies

17   summary judgment as to Puget Sound Repair's work constructing and installing equipment on the

18   vessel.  NAMT has not shown that Puget Sound Repair had no authority to rely on the credit of the

19   vessel because there are genuine issues of fact as to whether Captain Reading was involved in

20   overseeing the construction and/or installation of the equipment on the vessel.  Likewise, NAMT has

21   not shown that Puget Sound Repair purposefully intended to waive its right to assert a lien on the

22   vessel because there are genuine issues of fact as to whether Puget Sound Repair looked exclusively to

23   Joseph Kelso for payment and not at all to the credit of the vessel.

24                              BACKGROUND

25

ORDER - 1

1       Joseph Kelso, in conjunction with his business Global Anomalies, planned to charter the

2  FREEBIRD to begin a business extracting minerals from seawater.  Prior to entering the charter, he

3  contacted Plaintiff Puget Sound Repair, Inc. ("Puget Sound Repair") to order production of certain

4  equipment and tools for use in a warehouse on land and for use on the FREEBIRD.  Puget Sound

5  Repair began this work on February 24, 2004.  (McLean Aff., Ex. A ("Shreve Dep.") at 12-13, 17-18,

6  23-25, 28-29).  While FREEBIRD Captain Chuck Reading referred Kelso to Puget Sound Repair, it is

7  undisputed that Captain Reading had no involvement in ordering the materials at this stage and that

8  Puget Sound Repair's president James Shreve had not talked with Captain Reading about this work.

9       Kelso chartered the FREEBIRD from March 2 through March 12.   According to Shreve,

10  Puget Sound Repair installed storage bins on the FREEBIRD on March 1.  (Shreve Dep. at 29).

11  Shreve confirms this in his declaration accompanying Puget Sounds Repair's responsive brief by

12  asserting that Puget Sound Repair installed materials on the FREEBIRD before the Carter term began

13  on March 2.  (Shreve Decl., ¶ 4).  In this same declaration, Shreve asserts that both Kelso and Captain

14  Reading directed Puget Sound Repair where to install the materials on the vessel.  (Id., ¶ 5).  He

15  further asserts that "Captain Reading gave [Puget Sound Repair] direct instructions on how to install

16  equipment onboard the Vessel and some of the materials were fabricated onboard under the direction

17  of Kelso and/or Captain Reading."  (Id., ¶ 7).  Neither NAMT nor Captain Reading directly refute this

18  allegation; NAMT does not claim that Captain Reading did not direct Puget Sound Repair where to

19  install equipment on the vessel or that he did not direct Puget Sound Repair in its construction of some

20  of the materials while onboard the vessel.

21       Instead, NAMT points to Shreve's deposition testimony in which he states that it was and still

22  is his understanding that Kelso owns the equipment because Puget Sound Repair built it for him.

23  (Shreve Dep. at 43).  Additionally, Captain Reading asserts that he explicitly told Shreve when Shreve

24  was installing the materials on the vessel that Kelso did not have authority to pledge the credit of the

25  vessel and that Puget Sound Repair was to look solely to Kelso for payment.  (Reading Decl., ¶¶ 5-8).

ORDER - 2

1   In contrast, Shreve asserts in his declaration that Captain Reading never told him that Puget Sound

2   Repair could not put a lien on the vessel, that Kelso had no authority to pledge the credit of the vessel,

3   or that Puget Sound Repair should look solely to Kelso for payment.  (Shreve Decl., ¶ 6).

4         NAMT cancelled the charter on March 12 because Kelso had not paid for it.  Kelso also had

5   not paid Puget Sound Repair for any of its work.  Puget Sound Repair filed suit against the vessel,

6   NAMT, Hargett Marine, Inc. (a separate entity from NAMT, but apparently owned by the same

7   person), and Global Anomalies (associated with Kelso), alleging breach of contract, unjust enrichment,

8   fraud, and a maritime lien.  The only claim against NAMT is the maritime lien claim.  NAMT now

9   seeks summary judgment that Puget Sound Repair has no maritime lien on the vessel on the alternative

10  grounds 1) that Kelso did not have any authority to pledge the credit of the vessel before March 2 or

11  after March 12 and that Captain Reading did not grant such authorization, or 2) that Puget Sound

12  Repair was not looking to the credit of the vessel and therefore cannot now assert a maritime lien on

13  it.

14                                              ANALYSIS

15        Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v. City

16  of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying

17  facts are viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus.

18  Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the

19  evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v.

20  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the

21  burden to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H.

22  Kress & Co., 398 U.S. 144, 159 (1970).  Once the moving party has met its initial burden, the burden

23  shifts to the nonmoving party to establish the existence of an issue of fact regarding an element

24  essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex

25  Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The nonmoving party cannot rely on its pleadings, but

ORDER - 3

1  instead must have evidence showing that there is a genuine issue for trial. Id. at 324.  Additionally, "at

2  the summary judgment stage the judge's function is not . . . to weigh the evidence . . . but to

3  determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249.

4  I.  Authority

5      Under the Maritime Lien Act, a vendor has a maritime lien on a vessel if the vessel's owner or

6  a person authorized by the owner orders supplies or repairs for the vessel from the vendor.  46 U.S.C.

7  § 31342; Farwest Steep Corp. v. Barge Sea-Span 241, 769 F.2d 620, 623 (9th Cir. 1985).  It is

8  undisputed that Kelso had no such authority to order supplies prior to March 2; as of March 2 through

9  March 12 he did have such authority by virtue of his status as the vessel's charterer, see 43 U.S.C. §

10  31341(a)(4)(B).[1]  Puget Sound Repair contends, based on Shreve's declaration, that the authority for

11  the work done prior to March 2 derives from Captain Reading and his actions overseeing part of the

12  construction of equipment and directing the installation of the equipment.  NAMT counters that

13  Shreve's declaration on this point is in direct conflict with his deposition testimony and should be

14  ignored.  NAMT does not, however, cite what portion of the deposition testimony with which it is in

15  conflict.  Shreve's testimony that Kelso ordered the equipment does not contradict his declaration

16  statement that Captain Reading participated in directing construction and/or installation of the

17  equipment on the vessel.

18      As outlined above, there are disputed facts concerning Captain Reading's participation in the

19  work that Puget Sound Repair did on the vessel and his statements to Shreve about whether Puget

20  Sound Repair could rely on the vessel as credit.  While Kelso may have ordered the equipment, if

21  Captain Reading participated in overseeing the construction or installation of the equipment, this is

22  sufficient to provide the necessary authority for a maritime lien. Atlantic & Gulf Stevdores, Inc. v.

23  M/V GRAND LOYALTY, 608 F.2d 197, 202 (5th Cir. 1979) (authorization can arise from

24  ─────────────────

25      [1]  NAMT concedes that there are disputed facts concerning work done between March 2 and March 12, which precludes summary judgment for this work.

1   ratification by one with authority); <u>Reinholm Crane & Rigging Co. v. M/V OCEAN CROWN</u>, 484 F.

2   Supp. 935, 936 (W.D. Wash. 1979) (same).  Therefore, allowing for all reasonable inferences in favor

3   of Puget Sound Repair (the non-moving party), there are genuine issues of fact that preclude summary

4   judgment for Puget Sound Repair's work over which that Captain Reading may have overseen the

5   construction and installation.

6         However, summary judgment is warranted for any equipment that was built for use on land and

7   never installed on the vessel because it is undisputed that Kelso alone ordered and oversaw this work.

8   <u>II.  Reliance on Maritime Lien</u>

9         A vendor that supplies materials to a vessel is presumed to have relied on the credit of the

10   vessel.  <u>Rascal Survey U.S.A., Inc. v. M/V COUNT FLEET</u>, 231 F.3d 183, 189 (5th Cir. 2000).  The

11   vessel owner may attack that presumption by showing that the vendor waived his entitlement to the

12   lien.  "Such a waiver may occur as a result of exclusive reliance on a source of payment other than the

13   credit of the vessel."  <u>Farwest Steel Corp. v. Barge Sea-Span 241</u>, 828 F.2d 522, 525 (9th Cir. 1987).

14   To show such a waiver, the vessel owner must produce evidence that reasonably implies that the

15   vendor purposefully intended to forego the lien.  <u>Equilease Corp. v. M/V SAMPSON</u>, 793 F.2d 598,

16   606 (5th Cir. 1986) (holding that vendor waived its right to assert a lien because the vendor testified

17   that he relied <u>only</u> on other entities than the vessel).

18         NAMT argues that Puget Sound Repair relied exclusively on Kelso (and his company Global

19   Anomalies) to pay for the equipment.  As evidence, NAMT points to Captain Reading's declaration

20   that he explicitly told Shreve that Puget Sound Repair could not look to the vessel as credit but must

21   look solely to Kelso for payment.  Shreve directly contradicts this by stating that Captain Reading

22   never told him this.  This clearly shows a genuine issue of material fact.

23         Apart from this issue of fact, NAMT's argument is not persuasive.  NAMT points to Shreve's

24   deposition testimony that Shreve assumed Kelso would pay the bill when he agreed to do the work.

25   However, the fact that Puget Sound Repair looked primarily to Kelso for payment by sending the bill

1  to Kelso, does not mean that it intended to forego any right to assert a lien against the vessel. "[T]he

2  supplier's primary reliance on the personal credit of a charterer is insufficient to rebut the statutory

3  presumption." Maritrend, Inc. v. Serac & Co. (Shipping) Ltd., 348 F.3d 469, 472 (5th Cir. 2003). It

4  is true that evidence that the vendor relied on others besides the credit of the vessel can show waiver.

5  Rascal Survey, 231 F.3d at 189-90 (holding that vendor waived its lien because he looked solely to a

6  party other than the vessel for payment, based on testimony that the vendor had had no dealings with

7  the vessel owner or agents). However, if the vendor relied on the credit of the vessel "to some extent"

8  there is no waiver. Maritrend, 348 F.3d at 473. Here, there are disputed facts as to whether Puget

9  Sound Repair relied exclusively or solely on Kelso for payment, even if it is undisputed that Puget

10  Sound Repair relied primarily on Kelso for payment. Unlike in Rascal where the vendor admitted that

11  he had not had any dealings with the vessel owner or agents, Puget Sound Repair presents evidence

12  that Captain Reading was involved in overseeing the construction and/or installation of the equipment

13  on the vessel.

14      The Court is not persuaded by NAMT's argument that Shreve waived his right to assert a lien

15  based on his deposition testimony that he did not know he could assert a lien on the vessel until after

16  the work was finished. Shreve was asked in his deposition when he first learned that he could put a

17  maritime lien on the vessel, to which he responded that he learned after the work was done and after

18  talking with his attorney. (Shreve Dep. at 47-49). In his declaration he stated that he did not know

19  the definition of a maritime lien until after he finished his work, but he knew that if he provided work

20  to a vessel and did not get paid, he could file a claim on the vessel. (Shreve Decl., ¶ 5). NAMT

21  argues that his declaration statement contradicts his deposition testimony and therefore must be

22  disregarded. After a close review of the deposition testimony, however, the Court does not find it to

23  be inconsistent with his declaration. The scope of the question asked during deposition was never

24  clear. Furthermore, whether a vendor relied exclusively on a source of payment other than the credit

25  of the vessel is distinct from whether the vendor knew the precise nature of its right to assert a

1    maritime lien on the vessel.  NAMT has not cited any authority to prove that lack of such knowledge

2    constitutes a purposeful waiver of a presumed right to assert a lien.

3                                              CONCLUSION

4           The Court DENIES in part and GRANTS in part NAMT's motion for summary judgment.

5    The Court grants summary judgment as to work performed by Puget Sound Repair for use on land

6    and never installed on the vessel; Puget Sound Repair has no maritime lien arising from this work.

7    The Court denies summary judgment as to Puget Sound Repair's work constructing and installing

8    equipment on the vessel.  NAMT has not shown that Puget Sound Repair had no authority to rely on

9    the credit of the vessel because there are genuine issues of fact as to whether Captain Reading was

10   involved in overseeing the construction and/or installation of the equipment on the vessel.  Likewise,

11   NAMT has not shown that Puget Sound Repair purposefully intended to waive its right to assert a lien

12   on the vessel because there are genuine issues of fact as to whether Puget Sound Repair looked

13   exclusively to Joseph Kelso for payment and not at all to the credit of the vessel.

14          The clerk is directed to provide copies of this order to all counsel of record.

15          Dated: June 2, 2005

16

17                                              /s/ Marsha J. Pechman
                                                Marsha J. Pechman
18                                              United States District Judge

19

20

21

22

23

24

25

ORDER - 7