UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUND REPAIR, INC.,

    Plaintiff,

v.

M/V FREEBIRD FREEBIRD, et al.,

    Defendants.

No. C04-1366P

FINDS OF FACT AND CONCLUSIONS OF LAW

This bench trial was heard on July 11 and 12, 2005. The Court having heard and reviewed the testimony of the witnesses, the documents in evidence and the arguments of counsel, the Court makes the following finds of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. Puget Sound Repair, Inc. ("PSR") is a Washington corporation in the business of providing materials and services to marine vessels. Jim Shreve is the president.

2. Hargett Marine, Inc. is a Louisiana corporation. Lloyd Hargett is the president. Hargett Marine manages the vessels owned by North American Marine Transportation, L.L.C.

3. North American Marine Transportation, L.L.C. ("NAMT") is a Washington limited liability company. Lloyd Hargett is the sole member.

4. NAMT is the owner of the vessel M/V FREEBIRD FREEBIRD.

ORDER - 1

1    5. Captain Chuck Reading was the Captain of the M/V FREEBIRD and the agent or

2 representative of the owner of the vessel.

3    6. In February of 2004 Captain Reading was approached by Joseph Kelso. Mr. Kelso claimed

4 to be a representative of Global Anomalies UK, Ltd. and Global Anomalies North America, Inc. Mr.

5 Kelso outlined a project which included pumping sea water from the ocean floor, transporting it to

6 land, and processing the water for its minerals. Mr. Kelso needed a ship and a fabricator for

7 equipment. Captain Reading introduced Mr. Kelso to Jim Shreve. This venture was then conceived

8 and Shreve went to work fabricating and ordering equipment for both the sea and land based

9 operations.

10    7. Captain Reading facilitated a charter for the M/V FREEBIRD. Lloyd Hargett negotiated a

11 charter agreement (Ex. 2) with Mr. Kelso. The charter agreement does not contain a "no liens"

12 clause. Mr. Hargett did advise Mr. Kelso verbally that no credit was to be charged to the vessel and

13 that he could not load any equipment on the M/V FREEBIRD unless he owned it.

14    8. It was understood between Captain Reading, Mr. Kelso, and Mr. Shreve that the purpose

15 of the mission was to pump ocean water into tanks and return the tanks to land. The tanks would then

16 be transported to a warehouse for "processing."

17    9. Mr. Shreve began work fabricating equipment to be used both in the warehouse and at sea.

18 He billed Global Anomalies for both the labor and equipment prior to March 3, 2004.

19    10. The M/V FREEBIRD was delivered to the dock to be loaded on March 3, 2004.

20 Equipment loaded on sleds was moved to the deck of the vessel and tied down on D-rings welded by

21 PSR to the deck. The ship's rail was also modified to accommodate some equipment. Captain

22 Reading was on board directing placement of the D-rings to insure a balanced load and pointing out

23 hazardous work areas to the welders.

24    11. Although Captain Reading claims that he advised Mr. Shreve that he could not lien the

25 vessel, his testimony on this point is not convincing. Both Mr. Shreve and Mr. Davis, the supervisor,

ORDER - 2

deny that any statement was made. Captain Reading's questions to Mr. Davis on more than one occasion asking if the vessel will be liened belies Captain Reading's testimony. No statement was made concerning liening the vessel.

12. While at sea, the hose installed to collect sea water was severed and a new hose was needed to replace it. The vessel returned to shore and Mr. Shreve delivered a new three inch hose. The M/V FREEBIRD returned to sea to complete its mission and pumped sea water into the holding tanks.

13. The value of the labor expended to prepare the M/V FREEBIRD to go to sea and make equipment replacements between March 3 and March 11, 2004 was $17,757.00.

14. The value of the replacement hose delivered was $1,983.24 plus twenty percent profit for a total of $2,379.88.

15. On March 12, 2004 the charter was terminated by NAMT. PSR was instructed to remove all of the equipment except the welded D-rings from the vessel.

16. Both PSR and NAMT have not been paid by Kelso.

17. Mr. Shreve knew he had recourse against the vessel. He did not know the exact nature of his legal options until consulting his legal counsel.

18. Additional work on the M/V FREEBIRD was requested by NAMT from PSR to repair a galley sink, replace electrical equipment, and stock supplies. The value of this work was $3,216.58 (Ex. 7). The amount charged is reasonable for the materials and hours necessary to complete the work.

19. The M/V FREEBIRD was arrested by PSR to foreclose its maritime lien rights. The vessel owner's motion to quash the arrest was denied and $83,000 was placed in the Registry of the Court to secure the release of the vessel.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1333 and 46 U.S.C. § 31341, et seq.

1  2. Under the Federal Maritime Lien Act, 46 U.S.C. § 31341, "a person providing necessaries
2  to a vessel on the order of the owner has a maritime lien on the vessel." 46 U.S.C. § 31342(a).
3  3. The plaintiff must prove by a preponderance of the evidence that:
4  a) the equipment and services were necessaries,
5  b) they were furnished to the vessel, and
6  c) at the request of someone with authority.
7  4. Plaintiff has met its burden for a portion of it's claim. In this instance only two individuals
8  were in a position to potentially bind the vessel. Mr. Kelso could not have bound the vessel before the
9  charter was signed on March 3, 2004 and he had no authority to extend the credit of the vessel
10 according to the owner after the charter was in place. Captain Reading on the other hand had
11 authority to bind the vessel. He directed the placement and loading of the equipment, indicating where
12 the loads should be placed and altering the vessel with D-rings and rail modification to accommodate
13 the equipment. Plaintiff has failed to establish that the equipment ordered for Mr. Kelso's venture was
14 directed or requested by Captain Reading. The bill to Mr. Kelso dated March 2, 2004 implies that this
15 was Mr. Kelso's or his company's personal property. The materials were ordered prior to Mr. Kelso
16 having any authority to bind the vessel and are his personal property or obligation. Therefore,
17 Plaintiff's claim is limited to the cost of labor for loading Mr. Kelso's personal equipment and making
18 the various modifications to the vessel from March 3 to March 11, 2004. This totals $17,757.00.
19 5. The one exception to the exclusion of the materials claim is the cost of the replacement
20 hose in the amount of $1,983.24, plus the twenty percent profit for a total of $2,379.88. This was
21 requested by Captain Reading and was necessary to complete the mission of the vessel.
22 6. Finally, the additional work represented in Exhibit 7 in the amount of $3,216.58 is due and
23 owing. While the bill is not well documented and Defendants are justified in demanding a more
24 detailed statement, Plaintiff has established that the work was completed in a reasonable and necessary
25 manner. Therefore, no interest on the amount will be awarded. Plaintiff has not segregated or offered

ORDER - 4

evidence of the attorney's fees required to collect this portion of the claim and therefore the Court does not award fees at this time.

    7.  PSR has a maritime lien against the M/V FREEBIRD for $20,136.88.

    8.  PSR shall have judgment against Hargett Marine in the amount of $3,216.58.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: August 1, 2005

*[signature]*
Marsha J. Pechman
United States District Court

ORDER - 5